## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 12-CV-422-JED-TLW |
| v. | ) ) | |
| KANBAR PROPERTY MANAGEMENT, L.L.C., | ) ) ) | |
| Defendant. | ) | |

### DEFENDANT KANBAR PROPERTY MANAGEMENT, L.L.C.'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

**McAfee & Taft, A Professional Corporation**

Kathy R. Neal, OBA No. 674
Jessica L. Dickerson, OBA No. 21500
Ruth J. Addison, OBA No. 21584
**McAFEE & TAFT**
1717 S. Boulder, Suite 900
Tulsa, OK  74119
(918) 574-3020 (Telephone)
(918) 574-3120 (Facsimile)
kathy.neal@mcafeetaft.com
jessica.dickerson@mcafeetaft.com
ruth.addison@mcafeetaft.com

Attorneys for Defendant KPM Property
Management, L.L.C.

April 8, 2013

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

A.    INTRODUCTION ................................................................................1

B.    STATEMENT OF UNDISPUTED MATERIAL FACTS .............................................2

C.    BURDEN OF PROOF IN AGE DISCRIMINATION CASES ....................................7

D.    ARGUMENT AND AUTHORITIES ...........................................................8

    1.    As a Matter of Law, the EEOC Cannot Establish that Strength's Age was
the "but-for" Reason for her Termination. ...........................................8

    2.    As a Matter of Law, Strength is Not Entitled to Damages in Excess
of $100,000.00 ................................................................16

    3.    Strength has Failed as a Matter of Law to Meet her Burden of Mitigation of
Damages ......................................................................16

E.    CONCLUSION ................................................................18

i

## TABLE OF AUTHORITIES

**Page**

*Anaeme v. Diagnostek*, 164 F.3d 1275 (10th Cir. 1999) ................................................. 9

*Anderson v. Coors Brewing*, 181 F.3d 1171 (10th Cir. 1999) .................................. 15

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................. 2

*Barnes v. Occidental Pet. Corp.*, 761 F.Supp.2d 1285 (N.D. Okla. 2010) ..................... 10,14,16

*Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269 (4th Cir. 1985) ........................ 17

*Branson v. Price River Coal Co.*, 853 F.2d 768 (10th Cir. 1988) ............................... 15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................... 2

*E.E.O.C. v. Ford Motor Co.,* 529 F. Supp. 643 (D. Colo. 1982) ............................... 16

*E.E.O.C. v. PVNF, L.L.C.,* 487 F.3d 790 (10th Cir. 2007) ....................................... 9

*E.E.O.C.  v. Waffle House, Inc.*, 534 U.S. 279 (2002) ............................................. 16

*Ford Motor Company v E.E.O.C.*, 458 U.S. 219 (1982) ........................................... 16

*Gross v. FBL Financial Services, Inc.,* 557 U.S. 167 (2009) .................................... 8

*Jones v. Oklahoma City Pub. Sch.,* 617 F.3d 1273 (10th Cir. 2010) ......................... 8

*Kendall v. Watkins*, 998 F.2d 848 (10th Cir. 1993) .................................................. 2

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ................ 2

*McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1229 (10th Cir. 1998) ............... 15

*Medlock v. United Parcel Serv., Inc.*, 608 F.3d 1185 (10th Cir. 2010) ....................... 9

*Montes v. Vail Clinic, Inc.*, 497 F.3d 1160 (10th Cir. 2007) ....................................... 9

*Rea v. Martin Marietta Corp.*, 29 F.3d 1450 (10th Cir. 1997) ................................. 13

*Reynolds v. Sch. Dist. No. 1 Denver,* 59 F.3d 1523 (10th Cir. 1994) ....................... 14

*Rivera v. City and Cnty. of Denver,* 365 F.3d 912 (10th Cir. 2004) .......................... 14

*Salguero v. City of Clovis*, 366 F.3d 1168 (10th Cir. 2004) ......................................................14

*Simms v. Okla. ex rel. Dept. of Health*, 165 F.3d 1321, 1330 (10th Cir. 1999) ........................15

*Swackhammer v. Sprint/United Mgmt Co*., 493 F.3d 1160 (10th Cir. 2007) ...........................15

*Watts v. Norman,* 270 F.3d 1288, 1295 (10th Cir. 2001) .........................................................14

*Wilbanks v. Nordam Group, Inc.,* 2010 WL 4272581 (N.D. Okla. Oct. 25, 2010) ...............9,17

## Statutes

Fed. R. Civ. P. 56 ....................................................................................................................1,2

29 U.S.C. § 623(a) .......................................................................................................................8

## Publications

Pretty Definition, Merriam-Webster Online Dictionary, http://www.merriam-
webster.com/dictionary/pretty, last visited April 8, 2013 ..........................................................12

Young Definition, Merriam-Webster Online Dictionary, http://www.merriam-
webster.com/dictionary/young, last visited April 8, 2013 ..........................................................12

Defendant, Kanbar Property Management, L.L.C., ("KPM"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, moves the Court for summary judgment for the reasons set forth below.

## A.    <u>INTRODUCTION</u>

The Equal Employment Opportunity Commission ("EEOC") claims that KPM terminated Toni C. Strength because of her age. To the contrary, Strength's termination was the result of her conduct and statements she made to Sukhi Ghuman, KPM's new Chief Operating Officer, on October 28, 2010.

In an effort to reduce operating costs, on October 28, 2010, Ghuman terminated seven (7) KPM employees as part of a reduction-in-force. Strength was **not** one of the employees who was terminated on the morning of October 28, 2010. After the reduction-in-force had occurred, however, Ghuman became concerned about his decision to retain Strength. This was because of a meeting in which Strength exhibited a poor attitude, an unwillingness to aid in KPM's new direction regarding increasing sales and leases to potential clients, her refusal to change her scheduled work hours to a standard 8 a.m. to 5 p.m., and her inability to entertain potential tenants after hours. As a result, Ghuman determined that Strength was not the right person for the KPM team, and terminated her employment on October 29, 2010.

As set forth below, Plaintiff cannot establish, as a matter of law, that the legitimate, non-discriminatory reasons for Strength's termination are pretextual. Therefore, KPM's Motion for Summary Judgment should be granted.

### Summary Judgment Standard

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where the pleadings, depositions, answers to interrogatories, documents, and any affidavits, "show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Kendall v. Watkins*, 998 F.2d 848, 850 (10th Cir. 1993). Once the moving party has satisfied its burden under Rule 56(c), the opposing party must do more than "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### B.   STATEMENT OF UNDISPUTED MATERIAL FACTS ("SOF")

1.    Strength was employed by KPM as a Property Manager. *[Deposition of Toni C. Strength ("Strength Depo."), Ex. A, p. 30, ll. 13-19; p. 33, ll. 11-12].*

2.    Strength's employment was terminated on October 29, 2010. She was 53 years old. *[Strength Depo., Ex. A, p. 6, ll. 16-18; p. 8, ll. 13-15].*

3.    At the time of her termination, Strength was one of three Property Managers for KPM. The other two property managers were Carol Craig (54) and Lisa Brandes (41). *[Strength Depo., Ex. A, p. 35, ll. 5 - 22].*

4.    In the fall of 2010, KPM managed a portfolio of 14 commercial property buildings in downtown Tulsa. Management responsibilities for the 14 buildings were divided between Strength, Craig, and Brandes. *[Strength Depo., Ex. A, p. 36, ll. 1 - 14].*

5.    The decision to terminate Strength's employment was made by Ghuman, KPM's Chief Operating Officer. *[Deposition of Sukhi Ghuman ("Ghuman Depo."), Ex. B, p. 33, ll. 7 -*

*13; Deposition of Elizabeth "Lisa" Brandes ("Brandes Depo."), Ex. C, p. 72, l. 25; p. 73, ll. 1-2].*

6.    For several years, Strength had worked a schedule that allowed her to leave the office around 3:00 p.m. each day.[1]  *[Strength Depo., Ex., A, p. 77, ll. 25; p. 78, l. 1; Brandes Depo., Ex. C, p. 48, ll. 12-22; Deposition of Tracy Garrett Excerpt ("Garrett Depo."), Ex. D, p. 7, l. 25, p. 8, ll. 1 – 9; Deposition of Joe Russell ("Russell Depo."), Ex. E., p. 80, ll. 1 - 6].*  This alternative schedule enabled her to be home with her son after school.  *[Strength Depo., Ex. A, p. 79, ll. 22 -24; Brandes Depo. Ex. C, p. 48, ll. 6-22; p. 70, ll. 17 – 25; p. 71, ll. 1-8; Russell Depo., Ex. E, p. 80, ll. 9 - 14].*

7.    On October 28, 2010, the day before Strength's termination, Ghuman conducted a reduction-in-force in which seven employees were terminated.  *[Strength Depo., Ex. A, p. 70, ll. 11-20; p.71, ll. 6-25 p. 72, ll. 1-12; Brandes Depo., Ex. C, p. 172, ll. 13-25; p. 173, ll. 1-19].*

8.    Ghuman and Strength had never met before October 28, 2010.  *[Strength Depo., Ex. A, p. 64, ll. 23 – 25].*

9.    Ghuman did not select Strength for termination in the October 28, 2010 reduction-in-force.  *[Ghuman Depo, Ex. B, p. 20, ll. 23-24; p. 24, 12 – 25; p. 25, ll. 1-5; p. 37, ll. 3 – 7; p. 113, ll. 8 - 14].*  He believed that three property managers were needed to manage the building portfolio.  *[Ghuman Depo., Ex. B, p. 18, ll. 14-25].*  In fact, Strength was present at a meeting on October 28, 2010, where Ghuman informed the remaining KPM employees he believed the "layoffs were over."  *[Strength Depo., Ex. A, p. 76, ll. 13-15; p. 74, ll. 17 - 19].*

10.    Ghuman believed Property Managers needed to be at work during core business hours, such as 8:00 – 5:00, when people or tenants are in and around the buildings, and that

---

[1]  At various times, witnesses in the case testified that Strength left work at 3:00 p.m. or 3:30 p.m. each day.  Hence the statement that Strength left "around 3:00 p.m." each day.

finishing a work day around 3:00 was not an option for KPM Property Managers. *[Ghuman Depo. Ex. B, p. 30, ll.14 – 25; p. 31, ll. 1 – 25; p. 32, l. 1; Brandes Depo., Ex. C, p. 49, ll. 1 - 14].*

11.    On October 28, 2010, after the reduction-in-force was completed, Ghuman held a meeting of the Property Managers (Craig, Strength and Brandes)(the "October 28 Property Manager Meeting"). While the testimony of Ghuman and Strength differs as to what was said in this meeting and with respect to Strength's behavior, it is undisputed by Strength that Ghuman informed the Property Managers ". . . for some of you, your work hours will change." She believed Ghuman was referring to her work hours. *[Strength Depo., Ex. A, p. 75, ll. 1 – 25; p. 76, ll. 1-2; p. 77, ll. 16-25; p. 78, ll. 1; and p. 83, ll. 22-25; see also, Ex. F, EEOC Intake Questionnaire, EEOC-Kanbar 0044-0050].* According to Brandes, Ghuman's message in this meeting was that "we all needed to be working from 8:00 to 5:00 or 8:30 to 5:30 time frame." *[Brandes Depo., Ex. C, p. 175, ll. 2-7].*

12.    Ghuman terminated Strength the next day, October 29, 2010, because of her behavior and comments in the October 28 Property Manager Meeting. After the October 28 Property Manager Meeting, he became concerned about retaining Strength as a Property Manager because Strength she said she was not interested in the sales side of the business; said she could not change her work hours to the normal core work hours as he had directed; and because she had to leave early, she was unable to participate in evening entertainment of potential tenants. Ghuman opined that Strength's body language was bad in this meeting, and that she was rude and dismissive of his ideas. *[Ghuman Depo., Ex. B, p. 25, ll. 6 – 25; p. 26, ll. 1 – 25; p. 27, ll. 1-25; p. 28, ll. 1 -25; p. 29, ll. 1 – 11; Brandes Depo., Ex. C, p. 103, ll. 18 – 25; p. 177, ll. 20 – 25; p. 178, ll. 1 - 11].* Brandes testified Strength rolled her eyes and crossed her

arms during this meeting and that her attitude was resistant. *[Brandes Depo., Ex. C, p. 175, ll. 8-14]*.

13.    After considering Strength's work schedule and her refusal to change it, as well as her behavior in the October 28 Property Manager Meeting,  Ghuman determined it was not feasible to continue her employment. *[Ghuman Depo., Ex. B, p.25, ll. 6 – 25; p. 26, ll. 1 – 25; p. 27, ll. 1 – 25; p. 28, ll. 14 – 25; p. 29, ll. 1 – 11; 30, ll. 14 – 23; p. 31, ll. 3 – 25; p. 32, ll. 2 – 15]*. According to Ghuman, Strength's termination was "purely and utterly based upon her reluctance to adapt to the changes." *[Ghuman Depo., Ex. B, p. 119, ll. 15 – 19]*.  Ghuman believed Strength's "heart was not in the changes," and that her reaction to his proposed changes was negative. *[Ghuman Depo., Ex. B, p. 119, ll. 2 – 14]*.

14.    Strength admits that in the October 29, 2010 termination meeting, Ghuman told her "he felt there was a conflict since I had to pick up my school age son at 4:00." *[Ex. F, EEOC Intake Questionnaire, EEOC-Kanbar 0044-0050]*.  This is confirmed by Brandes, who testified that Ghuman was very concerned about Strength's work hours and that Ghuman told  Strength in the termination meeting, "I'm not sure you're going to be able to adjust your schedule, and it is concerning  me." *[Brandes Depo., Ex. C, p. 177, ll. 20 – 24]*.

15.    Tracy Garrett, KPM's Human Resource Manager, testified that after the October 28 Property Manager Meeting, Strength told her she could not change her work hours. *[Garrett Depo., Ex. D, p. 6, ll. 6 – 24]*.  Brandes testified there was a discussion in the October 28 Property Manager Meeting about Strength changing her hours, whether that could happen, and that it was going to be difficult for Strength to do so. *[Brandes Depo., Ex. C, p. 176, ll. 4-15]*.

16.    Property Manager Craig was the oldest of the three Property Managers and she was not terminated by Ghuman.  According to Ghuman, ". . . if we were taking age into

consideration, why did we retain Carol Craig?" *[Ghuman Depo., Ex. B, p. 36, ll. 18 - 19; p. 119, l. 25; p. 120, 1 - 6].*

17.    Ghuman never said anything to Strength she believed was derogatory because of her age. *[Strength Depo., Ex. A, p. 130, ll. 23-25; p. 131, l. 1].*  Subsequent to her termination, she learned of an "offensive" statement allegedly made by Ghuman to Joe Russell, KPM's former controller, with reference to her termination.  According to Russell, Ghuman said he terminated Strength because he wanted someone "younger and prettier." This is the only comment upon which she relies as evidence of age discrimination. *[Strength Depo., Ex. A, p. 167, ll. 1 - 6].*[2]  Russell was terminated from employment by Ghuman on December 6, 2010. *[Ghuman Depo., Ex. B, p. 37, ll. 8-25].*

18.    Ex-employee Russell, upon whose testimony Strength relies, however, testified that Ghuman had another reason for terminating Strength – he wanted someone who could "entertain potential tenants and meet with clients in the evenings."  This was in reference to Strength's alternative work schedule where she left work early each day. *[Russell Depo., Ex. E, p. 78, ll. 23-25; p. 79, ll. 1 – 19; p. 80, ll. 1 – 15; p. 97, ll. 10 – 25; p. 97, ll. 1- 7].*

19.    Strength testified in her deposition that she believed Ghuman terminated her because of her age **and** her looks.  It was not one or the other; it was a combination of the two. *[Strength Depo Ex. A,  p. 121, ll. 1 – 7; p. 120, ll. 14-25].*

20.    In her deposition, Strength summarized that her evidence of age discrimination involves three things only:  a) her age, 53; b) the alleged statement of Ghuman  to Russell that he wanted someone prettier and younger; and c) that there were others over 40 who were terminated the day before she was. *[Strength Depo., Ex. A,  p. 198, ll. 8 – 25; p. 199, ll. 1 – 3].*

---

[2]  Ghuman denies having made this statement but for purposes of this Motion for Summary Judgment, KPM will assume that it was made.

21.     These employees who were terminated on October 28, 2010, were:    Judy Matthews (61)[3], Addie Cobb (64)[4], Larry Hall (58), Sebe Avey (51), Jill Bates (28), David Atkinson (42), and Tommy Lee (33)[5].    *[KPM's Statement of Position, p. 3, Ex. G].*

22.     Stephanie Whitener (39) was hired after Strength's termination as Property Manager and she was given some of Strength's buildings to manage.    Other buildings were given to an existing employee Jackie Heine (23) to manage.    Still others buildings were distributed to Carol Craig (54) and Lisa Brandes (41). *[Brandes Depo., Ex. C, p. 19, ll. 1-17; p. 20, ll. 4-23; p.21, ll. 9-25].*

23.     In her deposition, Strength testified that payment of $100,000.00 by KPM to her would make her happy with respect to her claim of age discrimination.    *[Strength Depo., Ex. A, p. 144, ll. 1-8; p. 143, ll. 13-25].*

24.     Strength has not been employed at all since her termination approximately two and one-half years ago.    At best, she performed four or five activities per month (such as filling out an application, making an on-line application, making an inquiry, or sending a resume) from January 2011 to September 2011.    *[Strength Depo., Ex. A, p. 158, ll. 6-10].*    She cannot, however, provide any evidence of any efforts to find a new job in the months of November, and December 2010; in November and December of 2011; or in January 2012.    *[Strength Depo., Ex. A, p. 158, ll. 11-21].*    From April 2012 through September 2012, Strength only engaged in one job-search activity per month.    *[Strength Depo., Ex. A, p. 153, ll. 8 – 16; p. 158, ll. 6 – 21; p. 159, ll. 1 – 6.]*    There is no evidence in the record of her efforts to secure employment from October 2012 through present.

---

[3]    Judy Matthew's age discrimination charge was dismissed by the EEOC.
[4]    Addie Cobb's age and race discrimination charge was dismissed by the EEOC.
[5]    Lee was not notified of his termination until November 1, 2010.

25.    Strength has made no effort to obtain a real estate license or a RPA (Real Property Administrator) certification even though she admits she is competing for jobs against people who have those licenses and certifications.  She admits this places her at a disadvantage.  *[Strength Depo., Ex. A, p. 160, ll. 4-8; p. 159, ll. 15-25].*

## C.    BURDEN OF PROOF IN AGE DISCRIMINATION CASES

The ADEA makes it unlawful for an employer to take adverse action against an employee "because of such individual's age."  29 U.S.C. § 623(a).  Here, the EEOC must show that age was the "but-for" cause for Strength's termination.  *Gross v. FBL Fin. Services, Inc.,* 557 U.S. 167, 176 (2009).  Mixed-motive age discrimination generally will not satisfy the "but-for" test applied to age discrimination cases.  *Id.*  In ADEA cases, the Supreme Court held that the words "because of" are meant to imply that age actually played a role in the employer's decision and that it "had a determinative influence on the outcome."  *Id.* at 184.  This means ". . . a plaintiff must prove by a preponderance of the evidence that her employer would not have taken the challenged action but for the plaintiff's age*."  Jones v. Okla. City Pub. Sch.,* 617 F.3d 1273, 1277 (10th Cir. 2010).

For the purposes of this Motion for Summary Judgment, KPM agrees that the EEOC is able to establish a *prima facie* case of age discrimination.  KPM asserts that the EEOC cannot show that its legitimate, non-discriminatory business reasons for her termination are pretextual and that the EEOC cannot show, as a matter of law, that age was the "but-for" reason for Strength's termination.  The evidence in this case, when viewed in the best light possible for the EEOC, establishes, **at best**, there were mixed-motives for Strength's termination.  Mixed-motive discrimination here is legally insufficient to defeat KPM's summary judgment with respect to

Strength's claim of age discrimination because she cannot show her age was the "but-for" cause as a matter of law.

## D.   ARGUMENT AND AUTHORITIES

**1.    As a Matter of Law, the EEOC Cannot Establish that Strength's Age was the "but-for" Reason for her Termination.**

The EEOC cannot show that KPM's legitimate, business reasons for Strength's termination were a pretext for age discrimination.   The employer's burden to articulate a legitimate, non-discriminatory reason for its action is "exceedingly light."   *Anaeme v. Diagnostek*, 164 F.3d 1275, 1279 (10th Cir. 1999); *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1173 (10th Cir. 2007).   "To satisfy this burden, 'the employer need only produce admissible evidence which would allow the trier of fact to rationally conclude the employment decision had not been by discriminatory animus.'" *Anaeme,* 164 F.3d at 1279.   Once the employer articulates a legitimate, nondiscriminatory reason, "the burden shifts back to the plaintiff to show there is a genuine issue of material fact as to whether the employer's proffered reasons are pretextual." *E.E.O.C. v. PVNF, L.L.C.,* 487 F.3d 790 (10th Cir. 2007) (internal citations omitted).   The plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions" in the employer's proffered reason "that a reasonable fact finder could rationally find [it] unworthy of credence." *Id.* at 801 (internal citations omitted).   Ultimately, however, the EEOC has an affirmative burden to show that KPM would not have fired Strength, despite any of its proffered reasons for termination, but for her age. *Medlock v. United Parcel Serv., Inc.*, 608 F.3d 1185, 1194 (10th Cir. 2010); *Wilbanks v. Nordam Grp., Inc.*, 2010 WL 4272581, *10 (N.D.Okla. October 25, 2010 unpublished).   Importantly, it is not KPM's burden to negate any possible contributory role played by age in the challenged termination but, conversely, it is the

EEOC's burden to show that age was the "but-for" cause of the action.  *Barnes v. Occidental Pet. Corp.,* 761 F. Supp. 2d 1285, 1291 (N.D. Okla. 2010).

Here, non-discriminatory reasons for Strength's termination were clearly articulated by Ghuman.  Ghuman testified in reference to the October 28, 2010 Property Manager Meeting that he changed his mind about retaining Strength because of her reluctance to adapt to his changes:

> A:    . . . and Toni Strength's body language was bad.
> Q:    What do you mean by that?
> A:    She was huffing and puffing.  And when I was making suggestions, openly saying, "Well, I can't do that."
> Q:    Well, for example, what could she not do?
> A:    She wasn't interested in the sales side.
> Q:    What did she say?
> A:    "We're not here to sell."
> Q:    She said that?
> A:    Absolutely.
> Q:    What was your response?
> A:    I explained to her the importance and the difficulties that the portfolio was facing.  She also stated that she could not work beyond, I think it was, three o'clock, every day, because she had to pick up a child – her child.  So she would really be able – would, blanket, be unable to work beyond that time or have any – participate in any of the social events, which we were trying to attract people to the properties.

*[Ghuman Depo., Ex. B, p. 25, ll 16 – 25].*

\* \* \*

> Q:    Did that pose a problem for you?
> A:    It did pose a problem for me, because the nature of the business is they need to be working a full day.  And the way in which we wanted to roll the business forward was there would be some entertaining and – even if that meant five o'clock to six o'clock.  So her – again, from memory, she pretty much said that she couldn't do it and she won't do – can't do it, won't do it.  That's it, "I can't do it." Not even a consideration to work around it.

*[Ghuman Depo., Ex. B, p. 27, ll. 2 – 11].*

\* \* \*

10

Q:      Oh.  And what – what was your reaction to that?
A:      I was amazed that, A, she was very rude in that meeting.
Q:      In what way?
A:      She was just dismissive of the ideas, shrugging her shoulders, moving her head from left to right. . . .

*[Ghuman Depo., Ex. B, p. 28, ll. 19 – 25].*

\* \* \*

Q:      And so did that change your mind in some way about keeping her?
A:      I was concerned, and I asked her to think about the hours. And maybe I thought it could be that there was some difficulty with her accepting some of the changes, but I was disappointed that she was not interested.

*[Ghuman Depo., Ex. B, p. 29, ll. 5 – 11].*

\* \* \*

Q:      So did you come to the conclusion that –
A:      Yeah.
Q:      -- she could – was going to be terminated?
A:      Yeah.  And I had a – I thought about it overnight, and I came to the conclusion it was not feasible.

*[Ghuman Depo., Ex. B, p. 32, ll. 11 – 15]*

\* \* \*

Q:      And so you thought about it overnight and made a decision.
A:      Yeah.
Q:      -- overnight?
A:      Yeah.
Q:      And what was the decision?
A:      It was to let her go.

*[Ghuman Depo., Ex. B, p. 33, ll. 7 – 13].*

Strength attacks these articulated, non-discriminatory business reasons by offering the testimony of ex-employee Joe Russell, to whom Ghuman allegedly said he terminated Strength because he wanted someone "younger and prettier."  Actually, this statement in itself is a

11

mixture of discriminatory motives involving age and appearance discrimination.[6]  Merriam-Webster's Online Dictionary defines the word, "young" as "being in the first or an early stage of life, growth, or development" or "having little experience."  Young Definition, Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/young (last visited April, 8, 2013).  Merriam-Webster's Online Dictionary defines the word "pretty" or "prettier" as "pleasing by delicacy or grace," "having conventionally accepted elements of beauty," or "appearing or sounding pleasant or nice, but lacking strength, force, manliness, purpose, or intensity." Pretty Definition, Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/young (last visited April 8, 2013.).  These two words have a separate and distinct definition, only one of which implicates age.  If anything, "pretty" may be regarded as having to do with Strength's appearance which is not in itself actionable.  Here, Strength testified she believed she was terminated because of her age **and** her looks.  *[SOF 19]*.  Thus, even Strength admits there was a reason other than age for her termination – her appearance.   The alleged "younger and prettier" statement  cannot in itself provide the "but-for" reason for her termination.

Additionally, even Joe Russell's testimony does not involve only the "younger and prettier" statement.  Russell testified that Ghuman said not only that he terminated Strength because he wanted someone "younger and prettier," but also because she could not entertain potential tenants in the evenings because of her alternative work schedule.  Strength conveniently

---

[6] No federal law explicitly prohibits employers from discriminating on the basis of general personal appearance.  The only way to recover for appearance discrimination is to reformulate it into some other type of discrimination claim.  "Pretty" is usually reformulated into a sex discrimination claim. *See,* Increasing Incidence Discrimination Based on Personal Appearance, 50 No. 4 DRI for Def. 22 (April 2008).  It should be noted that Strength does not claim sex discrimination.

ignores this additional reason for her termination provided by Russell, but Russell has clearly supported one of KPM's non-discriminatory reasons for her termination.

Moreover, in her Intake Questionnaire provided to the EEOC, Strength admitted that in the October 29, 2010 termination meeting, Ghuman told her "he felt there was a conflict since I had to pick up my school age son at 4:00." [Ex. F, EEOC Intake Questionnaire, EEOC-Kanbar 0044-0050]. This admission, standing alone, provides evidence of a termination motive that does not involve Strength's age.

It should be noted as well that Ghuman raises a good point in his deposition – if he was motivated by age, why did he not terminate the oldest Property Manager, Carol Craig?

The EEOC also relies upon the ages of other employees who were terminated in the reduction-in-force as evidence of discriminatory motive on the part of Ghuman. This is actually a red herring because Strength was not selected for termination as part of the reduction-in-force and who was terminated prior to her is not relevant because the employees who were terminated the day before Strength are not similarly-situated to her. Nevertheless, even she admits there were reasons for why Judy Matthews' position as receptionist and why David Atkinson's Vice President position was eliminated.[7] When asked about the terminations of Atkinson, her

---

[7] Strength testified with respect to the elimination of Judy Matthews receptionist position:

| | |
|---|---|
| Q: | And did you think that she was someone that the company could do without? |
| A: | The way KPM was trying to go, yes. They were trying to go totally automated. |
| Q: | So – |
| A: | And she was a receptionist. |
| Q: | So you could understand the logic in choosing her for – |
| A: | That if that's the way it needed to be, I could understand it. |

*[Strength Depo., Ex. A, p. 71, ll. 9 – 18].*
With respect to David Atkinson's position, Strength testified that once Ghuman was named COO, she understood there was no need for a Vice-President. *[Strength Depo., Ex. A, p. 71, ll. 2- 5].*

supporter Russell indicated he did not believe the termination was age-related. *[Russell Depo., Ex. E, p. 53, ll. 5-8]*.

Pretext may be established by showing that the employer's proffered explanation is unworthy of credence. *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir. 1997). Where a plaintiff seeks to demonstrate that the employer's explanation is pretextual, there must be a "showing that the tendered reason for the employment decision was not the genuine motivating reason, but rather was a disingenuous or sham reason." *Reynolds v. Sch. Dist. No. 1 Denver,* 59 F.3d 1523, 1535 (10th Cir. 1994).[8] Given Strength's admission as to what was said by Ghuman in her termination meeting and the testimony of ex-employee Joe Russell – the EEOC's primary witness -- Strength cannot raise a material issue of fact regarding the falsity of KPM's explanation for her termination.

Whether an employment decision is unfair or overly harsh is not relevant to an ADEA analysis. *Barnes,*761 F.Supp.2d at 1293. Even if Ghuman misinterpreted Strength's body language in the October 28 Property Manager Meeting, even if he was wrong about her inability to change her work hours, and even if he misconstrued her lack of enthusiasm about her changes as negativity or rudeness, he was entitled to do so. "Evidence that the employer should not have made the termination decision – for example, that the employer was mistaken or used poor business judgment – is not sufficient to show that the employer's explanation is unworthy of

---

[8] Typically, a plaintiff may show pretext in one of three ways:  1) with evidence that the employer's stated reason for the adverse employment action was false; 2) with evidence that the employer acted contrary to a written policy prescribing the action taken by the employer under the circumstances; or 3) with evidence that the complaining employee was treated differently than similarly-situated employees who violated work rules of comparable seriousness. *Salguero v. City of Clovis*, 366 F.3d 1168, 1176 (10th Cir. 2004).  The only applicable way to show pretext in this case is by presenting evidence that the employer's stated reason for the adverse employment action was false.  There are no applicable policies at issue herein; there were no similarly-situated employees who were treated differently.  Strength is the only employee who Ghuman believed behaved inappropriately and refused to comply with the changes he imposed.

credibility." *Swackhammer v. Sprint/United Mgmt Co.*, 493 F.3d 1160, 1169-70 (10th Cir. 2007). "In determining whether the proffered reason for a decision was pretextual, [a court] examine[s] the facts as they appear to the person making the decision." *Rivera v. City and Cnty. of Denver*, 365 F.3d 912, 925 (10th Cir. 2004) (quoting *Watts v. Norman*, 270 F.3d 1288, 1295 (10th Cir. 2001)(internal quotation marks omitted). "An articulated moving reason is not converted into pretext merely because, with the benefit of hindsight, it turned out to be a poor business judgment." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998). It is undisputed that Ghuman honestly believed Strength had a conflict that left her unable to change her work hours. Ghuman's belief is supported by the testimony of Russell and Brandes, as well as the statement Strength made to Tracy Garrett that she could not change her work schedule. *[See SOF 11]*. This honestly-held belief is sufficient to establish a motive for Strength's termination that has nothing to do with age.

The Tenth Circuit has been very clear that the Court "does not act as a super personnel department that second guesses employers' business judgments." *Simms v. Okla. ex rel. Dept. of Health*, 165 F.3d 1321, 1330 (10th Cir. 1999); *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988). Furthermore, "mere conjecture" as to an employer's motives fails to prove pretext and will not defeat summary judgment. *Anderson v. Coors Brewing*, 181 F.3d 1171, 1179 (10th Cir. 1999); *see e.g. Swackhammer*, 493 F.3d at 1170-73.

Here, the EEOC must show not only that KPM's articulated, non-discriminatory reasons for Strength's termination are pretextual but also that age was the "but-for" reason for Strength's termination. Given the admitted and uncontroverted business reasons for Strength's termination that are non-discriminatory, **at best**, the EEOC can only establish a mixed-motive for Strength's termination. There is no ADEA liability for mixed motive employment actions. Thus, the

evidence when viewed in a light most favorable to the EEOC cannot establish age was the determinative and but-for reason for her termination.[9]

**2.      As a Matter of Law, Strength is Not Entitled to Damages in Excess of $100,000.00**

"An EEOC action under the ADEA is defined as an action "to enforce the right of (the) employee." (internal citations omitted).  Damages recovered by the EEOC are recovered on behalf of the employee." *E.E.O.C. v. Ford Motor Co.,* 529 F. Supp. 643, 646 (D. Colo. 1982).

Strength's damages are limited to a total of $100,000.00 as a matter of law because Strength previously testified that she believed $100,000.00 would make her whole.  *[Strength Depo., Ex. A, p. 143, ll. 22-25; p. 144, ll. 1-8.]*  Despite this admission, the EEOC seeks over four times this amount in damages from KPM.  Even though the EEOC brings this action on behalf of Strength, the United States Supreme Court has made clear that "an employee's conduct may effectively limit the relief the EEOC can obtain in court." *E.E.O.C. v. Waffle House, Inc.,* 534 U.S. 279, 280 (2002).  Here, Strength has admitted that $100,000.00 would satisfy her claim and her admission binds the EEOC as a matter of law.

**3.      Strength has Failed as a Matter of Law to Meet her Burden of Mitigation of Damages.**

The fact that the EEOC brings this action on behalf of Strength does not negate Strength's legal obligation to mitigate her damages.  Strength has not been employed at all since her October 29, 2010 termination by KPM and has made minimal and increasingly declining efforts to secure employment.

Employment discrimination claimants have a duty to minimize their damages.  *Ford Motor Company v E.E.O.C.,* 458 U.S. 219, 231 (1982).  Speaking in reference to Title VII

---

[9] As noted by this Court, the "but-for" causation standard is a relevant consideration at the summary judgment stage. *See Barnes,* 761 F.Supp.2d. at 1291; *Wilbanks,*2010 WL 4272581 at *10.

claimants, the United States Supreme Court noted "This duty, rooted in an ancient principle of law, requires the claimant to use reasonable diligence in finding other suitable employment." *Id.* (internal footnote omitted).  Further, "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable."  Thus, the general rule is that a  "claimant's voluntary refusal to seek or accept substantially equivalent employment, or to remain in such a job once secured, risks or even insures a loss of back pay." *Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1273 (4th Cir. 1985).

While the ADEA does not specifically address a plaintiff's duty to mitigate, courts have determined that certain legal standards in the ADEA and Title VII are so close in nature that they are interchangeable.  "[T]he standards, methods, and manner of proof established in Title VII case law are persuasive authority in cases arising under the ADEA, and [ ] courts routinely employ Title VII and ADEA case law interchangeably. *Wilbanks,* 2010 WL 4272581 at n.17.

An analysis of Strength's deposition testimony reveals there were two months after her October 29, 2010 termination from employment when she did not retain a record of any job search and cannot  recall where she applied. [*Strength Depo., Ex. A, p. 153, ll. 8 – 25; p. 154, ll. 1-5].*

She began retaining records of her job search in January 2011 for purposes of qualifying for unemployment and made a running list of her inquiries.  Basically, Strength admitted in her deposition that she performed four or five activities per month (such as filling out an application, making an inquiry, or sending a resume) until September 2011. *[Strength Depo., Ex. A, p. 158, ll. 6 -10].*  She did not record any job search activities in November, and December 2011, or in January 2012, and cannot remember where she searched for employment during those months.

*[Strength Depo., Ex. A, p. 158, ll. 11-21].*  She made four employment inquiries in February and March 2012 each, but only one employment inquiry in each month from April 2012 through September 2012.[10]  *[Strength Depo.*, Ex. A., p. 158, ll. 22-25; p. 159, ll. 1-6].  She has not attempted to obtain a real estate license or the RPA certification even though she admits she is competing for jobs against people who have those licenses and certifications.  *[Strength Depo., Ex. A, p. 160, ll. 4-8].*  She admits that this places her at a disadvantage.  *[Strength Depo., Ex. A., p. 160, ll. 12-16].*  She also admits that she is completely supported by her husband who "makes a good living." *[Strength Depo., Ex. A, p. 163, ll. 8-15].*

Thus, Strength cannot state what she did search for employment in November and December 2010.  She cannot state what she did to search for employment in November and December 2011, or in January 2012.  From April 2012 through September 2012, Strength's efforts dwindled to one employment search activity per month.  These minimal efforts to find employment do not constitute reasonable diligence and Strength has not satisfied her burden to mitigate damages.

Alternatively, should the Court find Strength has satisfied her burden of mitigation in some months and not others, KPM asserts Strength should be barred from recovering any back pay during the months where she did not satisfy her burden of mitigation.

## E.    CONCLUSION

Clearly, KPM has articulated non-discriminatory business reasons for the termination of Strength.  In response, Strength relies upon the testimony of an ex-employee of KPM claiming Strength was terminated because he wanted someone younger and prettier.  Even assuming *argendo* this statement was made, it is at best evidence of a mixed-motive and does not provide

---

[10] It should be noted this lack of enthusiasm for locating a new job coincides with the EEOC's Notice of Conciliation Failure dated April 4, 2012.

the EEOC with enough ammunition to show as a matter of law that age was the "but-for" reason for Strength's termination. This is particularly true in light of Strength's own admission regarding the perceived conflict by Ghuman with her working later in the afternoons and with Russell's testimony supporting this perceived conflict. Additionally, the EEOC cannot seek more that $100,000.00 in damages in this case because of Strength's admission that this amount would satisfy her claim. Finally, Strength's desultory search for employment following her termination does not satisfy her burden to mitigate her damages as a matter of law.

WHEREFORE Kanbar Property Management, L.L.C., respectfully requests that this Court enter summary judgment in its favor and against Plaintiff and for any other and further relief that this Court deems just and appropriate.

s/Kathy R. Neal
Kathy R. Neal, OBA No. 674
Jessica L. Dickerson, OBA No. 21500
Ruth J. Addison, OBA No. 21584
**McAFEE & TAFT**
1717 S. Boulder, Suite 900
Tulsa, OK  74119
(918) 574-3020 (Telephone)
(918) 574-3120 (Facsimile)
kathy.neal@mcafeetaft.com
jessica.dickerson@mcafeetaft.com
ruth.addison@mcafeetaft.com

Attorneys for Defendant KPM Property
Management, L.L.C.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 8, 2013, I transmitted the foregoing document to the Clerk of Court using the ECF System for filing on the following:

Jeff A. Lee
Trial Attorney
Equal Employment Opportunity Commission
Area Office for the State of Oklahoma
215 Dean A. McGee Ave., Suite 524
Oklahoma City, OK  73102
Jeff.lee@eeoc.gov

<u>*s/Kathy R. Neal*</u>
Kathy R. Neal

11386420_1

20