**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | | |
|---|---|---|---|
| 1. | **EQUAL EMPLOYMENT** | ) | |
| | **OPPORTUNITY COMMISSION,** | ) | |
| | | ) | |
| | **Plaintiff,** | ) | |
| | **and** | ) | |
| | | ) | |
| **v.** | | ) | **12-CV-422-JED-TLW** |
| | | ) | |
| 1. | **KANBAR PROPERTY MANAGEMENT,** | ) | |
| | **L.L.C.,** | ) | |
| | | ) | |
| | **Defendant.** | ) | |

**PLAINTIFF EEOC'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY**
**JUDGMENT WITH BRIEF IN SUPPORT**

<div style="margin-left:auto">

Jeff A. Lee, OBA #13483
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Oklahoma City Area Office
215 Dean A. McGee Ave., Suite 524
Oklahoma City, OK 73102
(405) 231-4375
(405) 231-5816 (fax)
jeff.lee@eeoc.gov

Counsel for Plaintiff Equal Employment
Opportunity Commission

</div>

April 29, 2013

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION    1

II.    PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF FACTS.    3

III.    STANDARD OF REVIEW FOR SUMMARY JUDGMENT.    12

IV.    THE EEOC HAS PRODUCED EVIDENCE OF AGE DISCRIMINATION
UNDER TWO METHODS OF PROOF.    13

    A.    The Direct Evidence in this Case Precludes Summary Judgment.    14

    B.    The Circumstantial Evidence Presented Precludes Summary Judgment.    16

        1. Prima Facie Case.    16

        2. Pretext.    17

V.    PLAINTIFF IS ENTITLED TO SEEK DAMAGES IN EXCESS OF $100,000.00.    21

VI.    DEFENDANT HAS FAILED TO PROVE STRENGTH FAILED TO MITIGATE
HER DAMAGES AS A MATTER OF LAW.    22

VII.    CONCLUSION    23

VIII.    CERTIFICATE OF SERVICE    24

## TABLE OF AUTHORITIES

**Cases**

*Abuan v. Level 3 Communications, Inc.*, 353 F.3d 1158 (10th Cir. 2003) ...................................17

*Adamson v. Multi Community Diversified Servs.*, 514 F.3d 1136, 1146 (10th Cir. 2008) ...................................17

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ..............................12, 13

*Atchley v. Nordam Group, Inc.*, 180 F.3d 1143 (10th Cir. 1999) ...................................18

*Beaird v. Seagate Tech.*, 145 F.3d 1159 (10th Cir. 1998), *cert. denied*, 119 S.Ct. 617 (1998) .......................................9

*Bennett v. Coors Brewing Co.*, 189 F.3d 1221 (10th Cir. 1999) ...................................17

*Campbell v Wal-Mart stores, Inc.*, 272 F. Supp 2d 1276, 1299 (N.D. Okla. 2003) .......................................5

*Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390 (10th Cir.1997) .................................. 16

*Danville v. Regional Lab Corp.*, 292 F.3d 1246 (10th Cir. 2002) ...................................20

*Eastman Kodak Co. v. Westway Motor Freight, Inc.*, 949 F.2d 317, 320 (10th Cir.1991) ...................................22

*EEOC v. Horizon Healthcare Corp.*, 220 F.3d 1184 (10th Cir. 2000) ...................................13

*EEOC v. Sandia Corp.*, 639 F.2d 600, 627 (10th Cir.1980) ...................................22

*Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 983 (10th Cir. 2008) ..............................14, 16

*Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, (10th Cir. 2002) ...................................18

*Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996) ...................................14

*Gross v. FBL Fin'l Services, Inc.*, 129 S.Ct. 2343, 2351(2009) ...................................13

*Hall v. U.S. Dep't of Labor*, 476 F.3d 847  (10th Cir. 2007) ...................................14

*Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993) ...................................13

*Jaramillo v Colo. Judicial Dep't.*, 427 F3d 1303 (10th Cir. 2005) ...................................18

*Jones v. Okla. City Public Schools*, 617 F.3d 1273, 1278 (10th Cir. 2010) .................13, 16, 17, 18

*Kenworthy v. Conoco, Inc.*, 979 F.2d 1463 (10th Cir.1992) .....................................14

*McCowan v. All Star Maintenance, Inc.*, 273 F.3d 917, 921 (10th Cir. 2001) .....................................12

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .....................2, 3, 14, 16

*Miller v. Eby Realty Group LLC*, 396 F.3d 1105 (10th Cir. 2005). .....................................18

*Orr v. City of Albuquerque*, 417 F.3d 1144 (10th Cir. 2005). .....................................17

*Plotke v. White*, 405 F.3d 1092, 1103 (10th Cir. 2005). ...............................3, 20

*Rea v. Martin Marietta Corp.*, 29 F.3d 1450 (10th Cir. 1994) .....................................14

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) .................12, 13, 20, 21

*Riggs v. Airtran Airways, Inc.*, 497 F.3d 1108 (10th Cir. 2007) .....................................14

*Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir.1998) .....................................17

*Sanders v. Southwestern Bell Tel.*, 544 F.3d 1101 (10th Cir. 2008). .............................14, 15

*Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000). .....................................17

*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981) .....................................16

*Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1512 (10th Cir.1997) .....................................14

*Tomsic v. State Farm Mut. Auto. Ins. Co.*, 85 F.3d 1472 (10th Cir. 1996) .....................................20

*Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) .....................................14

*Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 814 (10th Cir. 2000) ...............................13, 20

*Vorwald v. Laboratory Corporation of America*, Civ-04-1661-R, unpublished (WDOK, November 2, 2005) .....................................23

*Waters v Churchill*, 511 U.S. 661, 677 (1994) .......................................5

***Williams v. W.D. Sports, N.M., Inc.***, 497 F.3d 1079 (10th Cir.
2007) ..............................3, 20

***Wilson v. Union Pacific Railroad Co.***, 56 F.3d 1226 (10th
Cir.1995) ...................................23

**Federal Statutes and Regulations**

Federal Rules of Civil Procedure 56(c) .............................1,12,12,20

Federal Rules of Evidence 408 ...................................11, 22

## INDEX OF EXHIBITS

| No. | DESCRIPTION |
|---|---|
| 1 | Defendant's Responses to EEOC's Request for Admissions and Interrogatories. |
| 2 | EEOC Form 5, Toni Strength's Charge of Discrimination |
| 3 | Defendant's Statement of Position to the EEOC, 6/11/2011 |
| 4 | Defendant's Response to EEOC's Request for Information, 6/11/2011 |
| 5 | Defendant's 2nd Response to EEOC's Request for Information |
| 6 | Joe Russell declaration |
| 7 | Joe Russell deposition |
| 8 | Toni Strength's Letter of Discharge, 10/29/2010 |
| 9 | Performance Evaluation of Toni Strength, 2010 |
| 10 | Stefanie Whitener, Offer of Employment Letter, 11/1/2010 |
| 11 | KPM Corporate Representative 30(b)(6) deposition [Lisa Brandes] |
| 12 | Job Search Document of Toni Strength |
| 13 | Toni Strength deposition |
| 14 | *Vorwald v. Laboratory Corporation of America*, Civ-04-1661-R, *unpublished* (W.D. OK, 11/2/2005) |
| 15 | Lisa Brandes emails, 11/2/2010 and 11/3/2010 |
| 16 | Jon Read Deposition |
| 17 | Toni Strength declaration |
| 18 | Carol Craig deposition |
| 19 | KPM Personnel Policy, "Work Hours" |
| 20 | Suhki Ghuman deposition |
| 21 | Tracey Garrett deposition |
| 22 | Braxton Fears declaration |
| 23 | Clay Clark declaration |

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1. **EQUAL EMPLOYMENT** | ) | |
| **OPPORTUNITY COMMISSION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **and** | ) | |
| | ) | |
| v. | ) | **12-CV-422-JED-TLW** |
| | ) | |
| 1. **KANBAR PROPERTY MANAGEMENT,** | ) | |
| **L.L.C.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**EEOC'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT WITH BRIEF IN SUPPORT**

Plaintiff, Equal Employment Opportunity Commission ("EEOC") files this response to

Defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56(c).  The Commission

denies Defendant Kanbar Property Management L.L.C. (hereinafter "KPM") is entitled to

summary judgment as a matter of law on the claim KPM discriminated against Toni Strength

("Strength") because of her age; nor is KPM entitled to judgment that Strength is not fully

entitled to her back pay damages in excess of one hundred thousand dollars ($100,000) if proven

at trial. Finally, KPM is not entitled to judgment that Strength has failed to fulfill her legal

obligation to mitigate her damages for the reasons set forth in EEOC's cross-motion for partial

summary judgment and its supporting memorandum.

In support of its response, the EEOC submits the following:

-1-

## I.    __INTRODUCTION__

There is direct evidence that Toni Strength was fired because of her age.  The CEO of the Defendant, Suhki Ghuman, told Strength he decided to let her go because her position was being eliminated on October 29, 2010.  But shortly afterwards, Ghuman told Defendant's Financial Controller, Joe Russell, the reason he laid-off Strength was because "she was older" and Ghuman wanted someone "younger and prettier"[1].  This evidence alone is sufficient to defeat summary judgment as to age discrimination under the *direct evidence* methodology.

There is also strong evidence of age discrimination under the *McDonnell Douglas* analysis: (1) Strength was over fifty three (53) years old when she was fired purportedly because her position was eliminated[2]; (2) Strength, who had worked for KPM or its predecessors since 1992, was rated as "excellent" in her job performance and managed more buildings (ten of the fourteen buildings in downtown Tulsa) than the other property managers[3]; (3) within three days of her discharge, KPM hired a new property manager, Stefanie Whitener, age 39, and promoted a former clerical employee, Jackie Heine (age 23)[4] to a property manager position.  Each were assigned a portion of Strength's former buildings, Whitener four and Heine three[5].

KPM's reasons for Strength's discharge have also changed.  KPM initially informed Strength that she was terminated because her position had been eliminated. But after she filed an

---

[1](P. Ex. 6, *Declaration of Joe Russell*, ¶¶ 4-5).

[2](P. Ex. 8, *Strength's Letter of Discharge*, 10/29/2010) (P. Ex. 2, *Strength's EEOC Form 5*).

[3](P. Ex. 9, *Strength's Annual Performance Evaluation*) (P. Ex. 17, *Strength's Declaration*, ¶ (1)

[4](P. Ex. 3, *Defendant's Statement of Position to the EEOC*, p.4)

[5](P. Ex. 3, *Defendant's Statement of Position to the EEOC*, pp.3-(4)

age discrimination charge, its reasons changed.  KPM's after-the-fact rationale for Strength's discharge is that she had a poor attitude, she did not want to increase sales, and she refused to work past 3:30 p.m..[6]  A jury can reasonably conclude that new justifications arising after-the-fact are pretexts, articulated to cover-up the real discriminatory reason.  *See, e.g.*, ***Williams v. W.D. Sports, N.M., Inc.***, 497 F.3d 1079, 1093 (10th Cir. 2007); and ***Plotke v. White***, 405 F.3d 1092, 1103 (10th Cir. 2005).  Therefore, Defendant's motion for summary judgment on liability must be denied under the *McDonnell Douglas* method and analysis as well.

The remaining issues for which KPM seeks summary judgment, limiting Strength's recovery to $100,000 because she testified she would be happy with that amount, and her alleged failure to mitigate her damages,[7] should also be denied.

## II.    EEOC'S RESPONSE TO THE DEFENDANT'S STATEMENT OF FACTS.

Pursuant to Rule 56, Plaintiff submits the following responses to Defendant's statements of uncontroverted fact (referred to as "DSOF"):

### A.    EEOC admits the following DSOF.

EEOC admits the following DSOF as being undisputed for purposes of its response to Defendant's Motion for Summary Judgment: 1, 2, 3, 7, 8, 9, 11, 21, 22 and 25.

---

[6](P. Ex. 3, Fn 1, p.4)

[7] See, *Plaintiff's Motion for Partial Summary Judgment* [Doc. 24] on the issue of mitigation of damages.

**B.**     <u>The following DSOF are disputed and /or objectionable.</u>

<u>DSOF #4</u>:  EEOC admits that on October 28, 2010, the management responsibilities for the KPM building portfolio of fourteen commercial property buildings in downtown Tulsa were divided between Strength, Craig and Brandes; however Strength was responsible for ten of the fourteen properties.  P. Ex. 9, *Strength's Performance Evaluation*, 5/28/2010; P. Ex. 17, *Strength's Declaration*, ¶ 1.

<u>DSOF #5</u>: When Suhki Ghuman made the decision to eliminate Toni Strength's position with KPM, he held the position of CEO. P. Ex. 11, *KPM 30(b)(6) deposition* (26:15-24).

<u>DSOF #6</u>: Strength's approved schedule for several years was 6:30 - 7:00 a.m. to 3:00 or 3:30 p.m. each day.  P. Ex. 21, *Tracey Garrett deposition* (118:17- 119:16).  The business purpose for the changed schedule was at the request of the main tenants of her buildings, beginning with Amoco and subsequently IBM, British Petroleum and Paypoint, not because she had to pick up her son. P. Ex. 13, *Strength Depo* (79:1 - 82:12; 84:1-12); P. Ex. 17, *Strength's Declaration*, ¶ 2.  Brandes never bothered to research or investigate what Strength was doing each day at work prior to her termination on October 29, 2010. P. Ex 11, *KPM 30(b)(6) depo* (71:9-21). Ghuman also testified he did not know Strength reported to work early each day.  P. Ex 20, *Suhki Ghuman deposition* (88:8 - 89:9).

<u>DSOF #10</u>: EEOC admits Ghuman believed Property Managers needed to be at work during business hours, "when people or tenants are in and around the buildings"; and, EEOC admits Ghuman did not believe an employee was working a full day if that property manager or employee was coming to work at 8:00 a.m. and leaving at 3:00 p.m. each day.  However, neither he nor Brandes investigated what Strength's work day entailed.  Strength's hours were

different because of her major tenants' requests - not on her own personal family interests. P. Ex. 11, *KPM 30(b)(6) depo(71:9-21); P. Ex 13, Strength depo* (79:1 - 82:12). As stated above, Ghuman never knew Strength reported to work early each day and he never reviewed her personnel file, her annual evaluations, or her time records which clearly show she worked from 6:30 a.m. to 3:30 a.m. - and had for several years. Ghuman even stated that if Strength revised her work hours to start earlier, then he would not have fired her. P. Ex 20, *Ghuman depo* (30:16-25). The fact the decisionmaker presumed Strength's work hours were for her personal interests and did no investigation before deciding to discharge her, is evidence of pretext. ***Waters v Churchill***, 511 U.S. 661, 677 (1994) (failure to investigate can be sufficient evidence of pretext); Ghuman testified he would may not have even fired Strength if he had known her work schedule was such that she came in early. "So, for example, if she could collect the child or start earlier or work something around, I was happy to listen to suggestions." P. Ex 20, *Ghuman depo* (27:12-14; 30:16-25). ***Campbell v Wal-Mart stores, Inc.***, 272 F. Supp 2d 1276, 1299 (N.D. Okla. 2003) (pretext when no one from management spoke to plaintiff to obtain her side of the story). P. Ex. 11, *KPM 30(b)(6) depo (71:9-21); P. Ex 13, Strength depo* (79:1 - 82:12); P. Ex 17, *Strength Declaration*, ¶7. But Ghuman had already decided to fire Strength before the termination meeting began. P. Ex 20, *Ghuman depo* (32:2 - 33:13).

DSOF #12: EEOC disputes all the reasons offered by Ghuman for Strength's discharge. They are denied by Strength, P. Ex 17, *Strength Declaration*, ¶5 and contradicted by KPM itself, as well as other witnesses.

Carol Craig, one of the property managers, also does not recall Strength acting rude during any meeting on October 28th. If Strength crossed her arms or seeming distant, she was

not unique as the atmosphere in the property manager meeting was tense and everyone was afraid of being the next person fired by Ghuman. P. Ex 18, *Carol Craig Deposition*, (70:15 - 73:9). Further, Craig testified she never heard Strength talk back to Ghuman during either the property manager meeting or the staff meeting. P. Ex. 18, *Craig depo*, (78:8-19, 79:11-18, 81:11-25, 82:10-14, and 83:3-6).

KPM stated in its termination letter to Strength:

". . . due to a reorganization of services, it has become necessary to reduce the administrative management staff. Therefore, I regret to inform you that your position has been eliminated effective October 29, 2010...
As an employee whose position has been eliminated, you will be paid . . ."

P. Ex. 8, *Strength's Letter of Termination*. KPM admitted Ghuman actually told Strength her "job was eliminated ... and then admitted KPM had hired someone younger the same day". P. Ex. 11, *KPM 30(b)(6) depo*, (53:24 - 55:24)[8]. In truth, the property manager position held by Strength was never eliminated because Whitener was officially hired on November 1st (P. Ex 10, *Whitener Offer Letter*, 11/1/2010) and began work to manage several of the buildings previously assigned to Strength. P. Ex 15, *see also*, P. Ex. 1, *Defendant's Responses to EEOC's RFA and Interrogatories, RFA No. 3*, and *Response to Interrogatory No. 1*. KPM also promoted Jackie Heine (age 23) to assistant property manager and assigned her several of Strength's buildings to manage. Id*., Response to Interrogatory No. 1.* P. Ex 15, P. Ex. 11. *KPM 30(b)(6) depo (*138:18-21) and there is no dispute Heine was younger and less qualified than Strength. P. Ex 11, *KPM 30(b)(6) depo* (137:3-23).

_____

[8]KPM provided testimony through its designated Fed. R. Civ. P 30(b)(6) representative, Lisa Brandes.

-6-

Ghuman's testimony is contradicted by KPM's own discovery responses: (1) Brandes states "Strength was quiet" during the meeting; and (2) KPM's version of Ghuman's proposed testimony did not contain any mention of these demonstrative statements of Strength, now alleged for the first time in his deposition. P. Ex. 1, *Defendant's Responses to EEOC's RFA and Interrogatories*, *Interrogatory No. 1*.

Ghuman's testimony is also contradicted by KPM because it testified that Strength's version of the October 28th property manager meeting was correct, that no one said anything in response to Ghuman during the meeting, and although Strength's scheduled hours were 7:00 a.m. to 3:30 p.m., she was willing to change them. P. Ex 11, *KPM 30(b)(6) depo* (64:3-8) (referring to *Plaintiff's Deposition Ex. 6*, *Strength's EEOC Intake Questionnaire*, marked: EEOC-Kanbar 0048).[9] *See also*, P. Ex 17, *Strength's Declaration*, ¶5.

In response to the facts raised in DSOF #12, EEOC states the reasons listed by Defendant are pretext to cover the real reason Ghuman fired Strength. On October 29, 2010, the day Strength was fired, Ghuman told Joe Russell (KPM's Financial Controller)  he had laid-off Strength because "she was older" and Ghuman wanted someone "younger and prettier" in her position. P. Ex 6, *Joe Russell Affidavit*, ¶ 5; P. Ex. 7, *Joe Russell deposition*, (78:18-79:19). Ghuman's actions corroborate Russell's testimony because he hired a new property manager, Stefanie Whitener (age 39), on November 1, 2010, and promoted Jackie Heine (age 23) to assistant property manager.  Both assumed Strength's former property management duties.  It is

---

[9] The document is the same as Defendant's Ex. F [Doc.33].

undisputed Jackie Heine was less qualified than Strength. P. Ex.11, *KPM 30(b)(6) depo* (137:3-23).

DSOF #13: Ghuman reached the conclusion Strength did not work a full day or that she would not change her leave time from 3:30 a.m. to 5:00 p.m. before even performing any investigation of her work habits, annual performance evaluations, time records, or actual work schedule; P. Ex. 21, *Tracey Garret Deposition* (91:4-92:15); P. Ex. 20, *Ghuman depo*, (26:11 - 27:14) To now base the reason for her termination on a refusal to change her schedule is implausible given Strength's work history with KPM. Strength states "... if Ghuman had taken the time to investigate my past work history, I have been the employee most willing to adapt to changes. In the years immediately preceding my termination, a couple of property managers had left employment with KPM. I was asked to take over management of their buildings, after each person left, to the extent that at the time of my termination , I was managing ten (10) of KPM's downtown commercial properties – compared with the other two KPM Property Managers having responsibility for only two (2) buildings each". P. Ex 17, *Strength Declaration*, ¶ 6.

Moreover, Ghuman's claim that Strength was reluctant to adapt to changes (which a jury could find to be age stereotyping) is disputed by Strength who testified she told Ghuman during the October 29 termination meeting that she had already made arrangements for her son to be picked-up after school and that her heart was in working for KPM. P. Ex 13, *Strength depo* (79:1-82:12 recap of October 28th meeting) (93:10-95:7; 95:12 - 97:17; 97:24- 98:5); P. Ex 17, *Strength Declaration*, ¶ 6.

DSOF #14: Strength denies she was not going to change her work schedule and even states Ghuman did not listen to her in the termination meeting - that she did not have to pick-up

anyone in the afternoons.  P. Ex 17, *Strength Declaration*, ¶ 7.  Strength testified she told

Ghuman during the meeting she had already made arrangements for her son to be picked-up if he

needed a ride.  This was admitted by KPM during its deposition.   P. Ex 11, *KPM 30(b)(6) depo*

(64:3-8) (referring to *Plaintiff's Deposition Ex. 6*, *Strength's EEOC Intake Questionnaire*,

EEOC-Kanbar 0048).

     DSOF #15: Disputed. Strength did not meet with Tracy Garrett after the October 28

property manager meeting, instead everyone went straight into the all-staff meeting. P. Ex. 17,

*Strength Declaration*, ¶ 8.  Jon Read spoke with Strength on October 29 and Strength told him

she would have changed her work schedule. P. Ex 16, *Jon Read deposition* (40:5-41:12).

Strength again denies there was any discussion of changing her hours during the October 28

property manager meeting as claimed by Brandes. P. Ex. 17, *Strength Declaration*, ¶ 8.  Carol

Craig, another property manager attending the same property manager meeting, does not

remember any discussion about Strength changing her hours or Strength speaking during the

meeting. P. Ex. 18, *Craig depo*, (78:8-19, 79:11-18, 81:11-25, 82:10-14 and 83:3-6).

     DSOF #16:  EEOC admits Craig was the oldest Property Manager in October of 2010;

however, Ghuman's testimony with regard to Craig is irrelevant and inadmissible.  Strength's

comparators are those employees replacing her after the layoff. ***Beaird v. Seagate Tech.***, 145

F.3d 1159, 1165 (10th Cir. 1998), *cert. denied*, (the fourth element of the prima facie case may

be established "through circumstantial evidence that the plaintiff was treated less favorably than

younger employees during the RIF").

     DSOF #17: Objection, DSOF #17 is not a statement of material fact as there is no

requirement the victim of age discrimination be aware of age-biased statements by the

discriminating decision-maker.  Third party witnesses may testify to such comments.  The statement is also incomplete and inaccurate.  Russell testified Ghuman admitted he laid off Strength because she was older **and** he wanted someone "younger and prettier."  See response to DSOF # 12 above.  Through discovery, EEOC has also identified additional witnesses to whom Ghuman gave age-based reasons for Strength's termination, Braxton Fears and Clay Clark.  In November 2010, Ghuman told Fears and Clark during a meeting that he had let Strength go because she was "old and ugly," and who would want to lease from her. See P. Ex 22 *Declarations of Braxton Fears,* ¶ 6 and P Ex. 23, *Declaration of Clay Clark*, ¶ 5.  The fact Strength was unaware of these comments is immaterial and irrelevant.

Defendant admits the statement was made by Ghuman to Russell.  (Def.'s brf., Fn2, p.6).  As both Ghuman (CEO) and Russell (Financial Controller) were officers of KPM at the time of age-based reasons for termination and as Ghuman was the decision-maker with regard to the termination, these admissions are direct evidence of age discrimination and bind Defendant pursuant to FED. R. EVID. 801(d)(2).

DSOF #18:   Although EEOC does not dispute Russell's testimony, the reasons cannot be severed from each other given the context of Ghuman's statements; i.e. he decided not to retain Strength because she was "older," and his plan was to have someone" younger and prettier" than her to meet and entertain clients in the evening. See Response to DSOF # 17, *above*.   A jury can reasonably infer that this statement reflects only age bias.

DSOF #19:   Objection, DSOF #19 is not a statement of material fact as it irrelevant as to Strength's belief of what Ghuman intended when telling Russell the reasons he let Strength go. A jury could infer that the statement "younger and prettier" in the context used by Ghuman meant

that Strength was too old.  P. Ex. 6, *Russell Declaration*, ¶5. The determination - if the phrase "younger and prettier" can indeed be severed from each other in the minds of a jury - of which fact motivated Ghuman is one that should be left to the jury.

DSOF #20:   Objection, irrelevant, Strength's knowledge of the evidence supporting EEOC's claim is neither a statement of material fact nor an element of EEOC's claim. However, in response to Defendant's allegation that the facts they listed are the only facts supportive of Strength's claim of age discrimination, EEOC again offers the following: (1) Strength was fifty-three years of age when she was informed her position as a property manager with KPM was being eliminated (P. Ex. 8, *Letter of Discharge, 10/29/2010*) (P. Ex. 2, *Strength's Form 5*) ; (2) Strength was performing her job well at the time of her elimination (P. Ex. 9, *Performance Evaluation*), (3) she was replaced by Jackie Heine (age 23) and Stefanie Whitener (age 39) - who were assigned to cover seven of the ten buildings Strength previously managed,  P. Ex. 3, *Defendant's Statement of Position to the EEOC*,  pp.3-4; P. Ex 15, *Brandes email* of 11/3,2010; and (4) KPM later admitted it lied about the reasons for discharging Strength and subsequently changed its reasons for firing Strength from the elimination of her position to asserting termination for cause when responding to the EEOC. (P. Ex. 3, *Defendant's Statement*, p.4, Fn1). Defendant has now given several new false reasons it fired Strength- other than the one explained to her in the termination meeting on October 29, 2010. See Plaintiff's responses to DSOF #12 above.

The true reason Ghuman fired Strength was because she was old, as stated to Russell, Fears and Clark. P. Ex 6, *Russell Declaration* and P. Ex 7, *Russell depo*, (78:18-79:19);  P. Ex. 22, *Fears Declaration* and P. Ex 23, *Clark Declaration*.

-11-

DSOF # 23.  Objection, the testimony of Strength as to what amount from KPM would make her happy is inadmissible under FED. R. EVID. 408 because it was made in response to defense counsel soliciting an offer of settlement.  The question soliciting this information was also vague and ambiguous and properly objected to during the deposition.  P. Ex 13, *Strength deposition* (142:25 to 144:12).  Finally, it is not relevant to any issue in the case.  Any evidence of the amount of money that would make Strength happy in a possible settlement is not relevant to the determination of backpay, liquidated damages or front pay.

DSOF # 24. The EEOC admits the first two sentences of this statement.  KPM misconstrues the term "evidence" as Strength's own testimony indicates she looked for employment during the remainder of 2010 (November and December) as well as the latter part of 2011 (November and December) and afterwards (from October 2012 to present).  The "record" to which Defendant refers is Strength's own typewritten record, which she testified does not contain all of her job searches. P. Ex. 12,  *Strength's Job Search Document*; P. Ex. 13, *Deposition of Toni Strength*, 147:17 to 151:19; see *also,* P. Ex. 17, *Strength's Declaration*.

## III.    STANDARD OF REVIEW FOR PARTIAL SUMMARY JUDGMENT.

Summary judgment is appropriate only if there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c)(2). A fact is material if it could have an effect on the outcome of the case, and a dispute over a material fact is genuine "if a rational jury could find in favor of the nonmoving party on the evidence presented." ***McCowan v. All Star Maintenance, Inc.***, 273 F.3d 917, 921 (10th Cir. 2001) (internal citations omitted).  The Supreme Court has clarified the significance of jury determinations in an employment discrimination case: "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

-12-

facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) (*citing Anderson v Liberty Lobby*, 477 U.S. 242, 255 (1986)).

The court explained:

> Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. See Wright & Miller 299. That is, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses."

*Reeves*, 530 U.S. 151 (*citing Liberty Lobby*, 477 U.S. at 300). Thus, the court may not grant summary judgment based on testimony of Defendant's interested witnesses whose testimony the jury may discredit. S*ee also, EEOC v. Horizon Healthcare Corp.*, 220 F.3d 1184 (10th Cir. 2000) (reversing summary judgment for the employer where a reasonable jury could conclude that defendant's explanation was a pretext). Further, a plaintiff need not discredit all of the defendant's reasons for the jury to determine that the employer lacks credibility. *See Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 814 (10th Cir. 2000) ("when the Plaintiff casts substantial doubt on many of the employer's multiple reasons, the jury could reasonably find the employer lacks credibility . . . the jury need not believe the employer's remaining reasons.") (Internal citation omitted).   Therefore, KPM's motion must be denied.

## IV.    THE EEOC HAS PRODUCED EVIDENCE OF AGE DISCRIMINATION UNDER TWO METHODS OF PROOF.

In *Gross v. FBL Financial Services, Inc.*, 129 S.Ct. 2343, 2351(2009), the Supreme Court reaffirmed its holding in *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993), that the causation standard for an age discrimination case is a "but for" standard – that age was a "determinative" cause of the decision. After *Gross*, the Tenth Circuit confirmed that Gross did

not impose a heightened burden on the plaintiff. Contrary to KPM's argument, sole cause is not required, only that age be a but-for reason for the termination. *Jones v. Okla. City Public Schools*, 617 F.3d 1273, 1278 (10th Cir. 2010).

A plaintiff can meet its burden by either of two methods – either by direct evidence that age was a determining factor in the challenged decision, or by the burden-shifting method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996). If there is sufficient direct evidence, the burden-shifting framework of *McDonnell Douglas* does not apply. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985); *Sanders v. Southwestern Bell Tel.*, 544 F.3d 1101, 1105 (10th Cir. 2008).

### A.    The Direct Evidence  Precludes Summary Judgment.

Where a plaintiff presents direct evidence of age discrimination, the court need not engage in the prima facie-pretext analysis, but need only determine whether that evidence is sufficient to survive summary judgment. *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 983 (10th Cir. 2008). "Direct evidence is evidence from which the trier of fact may conclude without inference, that the employment action was undertaken because of the employee's protected status." *Sanders v. Southwestern Bell Tel.*, 544 F.3d 1101, 1105 (10th Cir. 2008) (*citing Riggs v. Airtran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007)). Direct evidence may take the form of statements "showing a discriminatory motivation." *Hall v. U.S. Dept. of Labor, Admin. Review Bd.*, 476 F.3d 847, 855 (10th Cir. 2007) (citations omitted). The key is the nexus between the statements and the employment action. *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir. 1994); *see also Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1512 (10th Cir.1997) (holding that plaintiff may prove discriminatory motive by "presenting 'evidence of conduct or

-14-

statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged [retaliatory] attitude'." (*quoting* **Kenworthy v. Conoco, Inc.**, 979 F.2d 1462, 1471 n. 5 (10th Cir.1992)); *Greene*, 98 F.3d at 560 (holding that plaintiff may establish age discrimination "directly, by presenting direct or circumstantial evidence that age was a determining factor in his discharge").

In *Sanders*, the employer engaged in a reduction in force by using a team of five area managers to rank seventeen subordinate managers, including the plaintiff. Based on these rankings, the plaintiff was told in a meeting with her area manager, Rick Wooten, that her job was being eliminated. According to plaintiff, Wooten told her that she was "surplussed" because of her age. Wooten denied the comment. *Id.* at 1105. The Tenth Circuit held that Sanders' own testimony about Wooten's comment was direct evidence of age discrimination because Wooten was a part of the ranking team responsible for selecting her to lose her job. *Id.*

The age-biased comments here, like those in *Sanders*, were made by the person who made the decision to terminate Strength. Under *Sanders*, these statements by a decisionmaker are direct evidence of age discrimination.  Further, Ghuman's statements to Russell that Strength was terminated because she was "older" are an admission by KPM pursuant to Fed. R. Evid. 801(d)(2). (See Response to DSOF #17).

Just as in *Sanders*, the decision-maker denied making any incriminating statement; however, KPM necessarily admits Ghuman's discriminatory statements are true for purposes of its motion.  (Def.'s brf., Fn 2, p.6).  As stated in *Sanders*:

> Although SWBT has put forth evidence that calls Ms. Sanders's recollection of events into question, it is not our province at the summary judgment stage to weigh the evidence or make credibility determinations. . . . If the jury believes Ms. Sanders's testimony, it

could conclude – directly, without the aid of any favorable inferences – that the reason for her surplus was her age.

*Id.* at 1105-06.  The direct evidence here is even stronger because Ghuman's age-based statements are admissions of a corporate officer acting in that capacity when the statements were made. Moreover, Ghuman made the age-based admissions ". . . he had let Ms. Strength go because she was old and ugly," stating "who would want to lease from her" to two impartial witnesses, Fears and Clark.  (Response to DSOF #20.)

On a motion for summary judgment, where there is direct evidence of discriminatory animus, it is a matter for the jury given that a jury's disbelief of defendant's proffered justifications would not be unreasonable. *See Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1396 n. 5 (10th Cir.1997) (noting that direct evidence may go to prove that employer's reasons are pretextual and therefore unworthy of belief).

Once direct evidence is produced by plaintiff, the court need only determine whether that evidence is sufficient to survive summary judgment. *Fischer,* 525 F.3d at 983, *supra*.  Given the admissions of KPM as to the age-based reasons for Strength's termination, Defendant's motion for summary judgment should be denied.

### B.    The Circumstantial Evidence Presented Precludes Summary Judgment.

Even beyond the direct evidence, there is compelling evidence of age discrimination sufficient to defeat summary judgment under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973).  *Jones*, *supra*, made clear that the burden-shifting analysis of *McDonnell Douglas* and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981) still apply to ADEA claims.

-16-

### 1. <u>Prima Facie Case</u>.

To prove a prima facie case of age discrimination, a plaintiff must show: (1) she is a member of the class protected by the [ADEA]; (2) she suffered an adverse employment action; (3) she was qualified for the position at issue; and (4) she was treated less favorably than others not in the protected class.'" *Jones*, 617 F.3d at 1279, *quoting Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir.1998). If the position is filled by a person outside the protected class, discrimination may be inferred. *Adamson v. Multi Community Diversified Servs.*, 514 F.3d 1136, 1146 (10th Cir. 2008).  The plaintiff's burden at the prima facie stage is "slight," requiring only that she provided enough evidence to raise an inference of discrimination. *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005).

EEOC has presented sufficient facts to meet these criteria. (Response to DSOF #20 *above*).  KPM has now admitted Strength's former position was not eliminated and that it replaced her with two younger employees, Stefanie Whitener (age 39) and Jackie Heine (age 23). Both were assigned to cover some, but not all, of the ten buildings previously assigned to Strength.  P. Ex 15, *Brandes email.*  "The fact that a younger employee was placed in the position [for which Plaintiff was qualified] satisfies the fourth factor of a prima facie case of age discrimination".  *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1138 -1139 (10th Cir. 2000).   The Tenth Circuit has repeatedly rejected an employer's argument that no inference of discrimination can be drawn where an employee's position was eliminated and his duties were divided among other employees not in the protected class. *Abuan v. Level 3 Communications, Inc.*, 353 F.3d 1158, 1169 (10th Cir. 2003); see *also*, *Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1235 (10th

Cir. 1999) ("the hiring of new, younger employees might be evidence of Coors' alleged discriminatory intent at the time appellants left Coors").

### 2. Pretext.

Once the plaintiff makes a prima facie case, the burden shifts to the employer to state a legitimate nondiscriminatory reason for its actions, after which the plaintiff has the burden to show that the proffered reason is pretextual. *Jones*, 617 F.3d at 1278. The reason given by KPM on October 29 to Strength was that her position had been eliminated. "Pretext exists when an employer does not honestly represent its reasons for terminating an employee." *Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1111 (10th Cir. 2005). She was the only person laid off on this day as Ghuman had announced the day before that the layoffs were over. (DSOF #9.) That was a false reason as was later admitted by KPM when responding to the EEOC in June 2011. P. Ex. 3, *Defendant's Statement*. Evidence that KPM fabricated the reasons asserted in Strength's termination letter and evidence of the procedural irregularities regarding the "manufactured" elimination of Strength's position are evidence of pretext. *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002) ("evidence of pretext may include, but is not limited to, the following: "prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating ... criteria); and the use of subjective criteria.") (Internal citations omitted.) There is no dispute that KPM told Strength her position was being eliminated in the termination meeting on October 29, 2010 and this reason was false.

*Atchley v. Nordam Group, Inc.*, 180 F.3d 1143, 1147-49 (10th Cir. 1999) is instructive. There the court viewed with suspicion a corporate restructuring justification used to counter a

discrimination claim where the plaintiff's position was the only one eliminated. The court found the "so-called restructuring [pretextual because]. . . Nordham hired another document clerk [whose duties] were similar to those that had been performed by Ms. Atchley". *Id* at 1150; *see also*, **Jaramillo v Colo. Judicial Dep't**., 427 F3d 1303, 1311 (10th Cir. 2005) (timing of the change in position and change in the evidentiary basis for the new reason can be pretext). Brandes' email of November 2, 2010, shows KPM was still trying to come up with a reason for calling Strength's termination a lay-off.

The new reasons for termination offered in June 2011 by KPM were: (1) Strength worked a schedule of 6:30 a.m. to 3:00 p.m.,  purportedly because she needed to pick up her son after school; (2) Strength's work schedule "interfered with her ability to market the properties she managed because she could not show any of the properties she managed after 3:00 p.m." ; and Ghuman believed Strength was "also unable to attend evening networking events which are an important source of potential clients and business referrals"  (P. Ex 3,  *Defendant's Statement*.) There is direct evidence that despite Strength's stellar work performance, Ghuman did not want to retain her because she was older and didn't believe she could successfully entertain potential clients because she was "old and ugly". (Response to DSOF #17 and #19) Ghuman really wanted "younger and prettier" women to attend evening networking events and attract potential clients and business referrals. (Response to DSOF #17, #19 and #20, *supra*). Ghuman believed Strength was too old to fit these new plans for KPM.  The direct evidence of her age intertwined with

every pretextual reason given for her termination in KPM's position statement to EEOC. P. Ex 3, *Defendant's Statement* (*See also*, Response to DSOF #20)[10].

Defendant now seeks summary judgment on liability based on its new theories. But the new reasons for Strength's termination are merely after-the-fact justifications for termination. New justifications arising "after-the-fact" are pretexts to cover the discriminatory reason and should be left to a jury to decide which reason is the truth[11]. *See, e.g.*, **Williams v. W.D. Sports, N.M., Inc.**, 497 F.3d 1079, 1093 (10th Cir. 2007); **Plotke v. White**, 405 F.3d 1092, 1103 (10th Cir. 2005); **Tyler v. RE/MAX Mountain States, Inc.**, 232 F.3d 808, 813 (10th Cir. 2000) ("We are disquieted, however, by an employer who 'fully' articulates its reasons for the first time months after the decision was made.")

The reasons provided by Ghuman for Strength's discharge were pretextual and designed to hide his true reason, that Strength was too "old" and that he wanted "younger and prettier" women to fill the property management position.  Pretext can be also be shown by age-biased comments. **Tomsic v. State Farm Mut. Auto. Ins. Co.**, 85 F.3d 1472, 1478-79 (10th Cir. 1996) (biased comments by decision-maker in connection with the decision may be evidence of pretext, even if not direct evidence); **Danville v. Regional Lab Corp.**, 292 F.3d 1246, 1251 (10th Cir.

---

[10]KPM's argument is unconvincing that Ghuman's desire to employ "younger and prettier" property managers combines an illegal reason, age, with a legitimate reason, personal appearance (a.k.a. youthful appearance).  Certainly, a jury could reasonably infer that age was the but-for reason for Strength's discharge or that "younger and prettier" in the context used meant Ghuman did not want to retain Strength because of her age.

[11]  In 2013, at his deposition, Ghuman added new reasons for terminating Strength, i.e., that she was rude and defiant and refused to change her hours - all of this during the property manager meeting with Ghuman on October 28, 2010.  None of these reasons were given during the exit interview with Strength on October 29, 2010, nor contained in any previous responses by KPM to the EEOC in 2011.  Carol Craig counters this testimony in stating she does not recall Strength ever being rude and particularly not in the meeting claimed by Ghuman. (DSOF #12). Strength also denies Ghuman's allegations.

2002) ("Plaintiff has shown an adequate nexus to the employment decision to treat the remark as evidence of pretext.").

The Tenth Circuit relying on *Reeves*, 530 U.S. 133, 148 (2000), instructs that once pretext is established, no additional evidence of discrimination ("pretext plus") is required. *Jones*, 617 F.3d at 1280. The *Reeves* court explained:

> In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.' *Reeves,* 530 U.S. at 147.

Therefore, regardless of which analysis is applied – the direct evidence model or the circumstantial burden-shifting McDonnell Douglas model – summary judgment on Strength's age discrimination claim must be denied.

## V.  EEOC IS ENTITLED TO SEEK DAMAGES IN EXCESS OF $100,000.00.

KPM argues that EEOC's recovery for Strength cannot exceed $100,000 because she testified in her deposition that amount would make her "happy."  KPM relies on the following exchange:   13    Q   What do you want today from Kanbar?  If  I

14   could write a check to you, what amount would make

15   you happy?

[Objection  and exchange of counsel omitted.]

22    Q   (BY MS. NEAL) So back to my question.  If

23   I were to write you a check here today, what amount

24   of money would make you happy, Ms. Strength?

25      MR. LEE:  You can go ahead and answer.  My

 1   objection is just to the form.

 2    A   To be treated fairly I can answer.

-21-

3     Q   I'm asking for a figure.  I want to know

4   the amount.

5     A   Okay.

6     Q   You walk out of here today and have a

7   Merry Christmas, what amount would that be?

8     A   100,000.

9     Q   Okay.  Do you want to go back to work for

10   Kanbar?

11     A   As long as they would treat me fairly, I'd

12   love to go back to work.

P. Ex 13, *Strength depo* (142:25 to 144:12).

Strength was not asked the amount of her back pay.  She was not asked the amount of her

damages.  She was asked what figure would make her "happy."  KPM has thus presented no

evidence about the back pay or liquidated damages due Strength, nor the amount of front pay.

Certainly, the testimony above is not relevant to those issues.  Moreover, the above testimony is

inadmissible under FED. R. EVID. 408 because defense counsel was apparently trying to elicit a

settlement demand from Strength.  Summary judgment on this issue must be denied.

## VI.   DEFENDANT HAS FAILED TO PROVE STRENGTH FAILED TO MITIGATE HER DAMAGES AS A MATTER OF LAW.

The claim that Strength has failed to mitigate her damages is an affirmative defense to be

pled and proven by the defendant. ***Eastman Kodak Co. v. Westway Motor Freight, Inc.***, 949

F.2d 317, 320 (10th Cir.1991) (internal citations omitted):

The defendant has the burden to prove that the plaintiff did not exercise
reasonable diligence in mitigating its damages [and] [t]he aggrieved party need only take
reasonable steps under the circumstances of the particular case to mitigate its damages. . .

-22-

The EEOC acknowledges that employees claiming entitlement to back pay and benefits are required to make reasonable efforts to mitigate damages. ***EEOC v. Sandia Corp.***, 639 F.2d 600, 627 (10th Cir.1980). In ***Sandia Corp***., 639 F.2d at 627 (10th Cir.1980) the Tenth Circuit held:

> In order to satisfy the burden [of proving failure to mitigate], `the defendant must establish (1) that the damage suffered by plaintiff could have been avoided, i.e. that there were suitable positions available which plaintiff could have discovered and for which he was qualified; and (2) that plaintiff failed to use reasonable care and diligence in seeking such a position.'

(Emphasis added)(Citation admitted.)

Defendants' burden involves more than merely criticizing the plaintiff's decisions and record keeping of her job searches (Def.'s brf at pp. 16-18); it requires the affirmative production of evidence to show that additional reasonable efforts would have created a different result.  The Tenth Circuit has specifically held that the failure to prove that other suitable jobs were available precludes such a defense.  The burden was explained in ***Wilson v. Union Pacific Railroad Co.***, 56 F.3d 1226, 1232 (10th Cir.1995):

> [T]he trial court's refusal to instruct the jury on mitigation does not amount to an abuse of discretion because the evidence was inadequate to support a mitigation instruction. Mr. Wilson's general failure to seek employment for eighteen months before trial does not alone suffice to justify a mitigation instruction; the defendant must also show that appropriate jobs were available.

The EEOC has satisfied its burden of proof. (Response to DSOF #24).  KPM has failed to produce any evidence that Strength failed to seek jobs that were substantially equivalent to her KPM property management position. *See also*, EEOC's motion for judgment on Defendant's Sixth Affirmative Defense [Doc. 24].

Finally, the evidence relied on by KPM to show Strength did not act reasonably in seeking comparable employment falls far short of the mark.  Strength persistently over many

months repeatedly tried to find comparable employment.  (Response to DSOF #24). There were no suitable positions. Her efforts were reasonable in light of the available employment opportunities. *See also*, **Vorwald v. Laboratory Corporation of America**, Civ-04-1661-R, unpublished (WDOK, November 2, 2005) (attached hereto as P Ex 14).

Since the Defendant has offered no evidence on either element, Defendant's motion for summary judgment on the failure to mitigate issue should be denied and the EEOC cross-motion for judgment on Defendant's Sixth Affirmative Defense should be granted.

**VII.**    **CONCLUSION**

Because there is direct evidence of age discrimination and issues of disputed material facts, KPM's motion for summary judgment on liability should be denied.  As a matter of law, the motion to cap at $100,000 the EEOC's claim for back pay, liquidated damages, and front pay should also be denied.  KPM's motion for summary judgment on its affirmative defense that Strength failed to mitigate her damages must also be denied and EEOC's cross-motion for partial summary judgment on the Defendant's Sixth Affirmative Defense should be granted.

**RESPECTFULLY SUBMITTED THIS 29ᵗʰ DAY OF APRIL, 2013.**

> s/   *Jeff A. Lee*
> Jeff A. Lee, OBA #13483
> EQUAL EMPLOYMENT OPPORTUNITY
> COMMISSION
> Oklahoma City Area Office
> 215 Dean A. McGee Ave., Suite 524
> Oklahoma City, OK 73102
> (405) 231-4375
> (405) 231-5816 (fax)
> jeff.lee@eeoc.gov
>
> *Plaintiff Equal Employment Opportunity*
> *Commission*

-24-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 29th day of APRIL 2013, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing.  Based on the records currently on file, the Clerk of the Court will transmit a notice of Electronic Filing to the following ECF registrants:

Kathy R. Neal
McAFEE & TAFT
1717 S. Boulder, Suite 900
Tulsa, OK 74119
(918) 574-3003 (Telephone)
(918) 574-3103 (Facsimile)

*Attorneys for Defendant KPM Property
Management, L.L.C.*

_s/ *Jeff A. Lee*_____
            JEFF A. LEE