# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | )<br>)<br>) |
| PLAINTIFF, | )<br>) |
| vs. | ) Case No. 12-CV-00422-JED-TLW<br>) |
| KANBAR PROPERTY MANAGEMENT, L.L.C. | )<br>)<br>) |
| DEFENDANT. | )<br>) |

## OPINION AND ORDER

The Court has for its consideration plaintiff's Motion for Partial Summary Judgment with Brief in Support (Doc. 24) and defendant Kanbar Property Management, L.L.C.'s Motion for Summary Judgment and Brief in Support (Doc. 30).

### Background facts

This is an age discrimination action brought by the Equal Employment Opportunity Commission (the "EEOC") against defendant Kanbar Property Management, LLC ("Kanbar") pursuant to Section 4 of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 626(b) (the "ADEA"). The EEOC pursues its ADEA claim on behalf of Toni Strength. Strength was employed by Kanbar as one of three Property Managers, the other two being Carol Craig and Lisa Brandes. During the relevant timeframe – Fall of 2010 – Kanbar managed a portfolio of 14 commercial properties in downtown Tulsa. Management responsibilities for these properties were divided amongst Strength, Carol Craig, and Lisa Brandes.

In September of 2010, Sukhi Ghuman was retained by Kanbar as its Chief Executive Officer. On October 28, 2010, Ghuman laid off seven employees. Strength was not among these

seven. But, the following day, Strength's employment was terminated by Ghuman. In doing so, Kanbar provided Strength with a letter stating that her position had been eliminated. It is undisputed that her position was not actually eliminated. The EEOC maintains that Strength was terminated as a result of her age (53 at that time). In support of this assertion, the EEOC relies upon the testimony of three individuals: Joe Russell, Braxton Fears, and Clay Clark. Russell attests that he had a private conversation with Ghuman after Strength's firing where Ghuman told Russell that he had fired Strength because "she was older and he (Ghuman) did not believe she had the ability to meet potential tenants and entertain existing tenants after work." (Doc. 36-6). Russell also states that Ghuman told him that Ghuman wanted someone younger and prettier for the position. (*Id.*). Fears and Clark both attest that Ghuman told them that he had fired Strength because she was "old and ugly" and that he added "who would want to lease from her." (Docs. 22 and 23). Ghuman denies having made these statements.

On April 13, 2011, Strength filed a charge of discrimination with the EEOC and Oklahoma Human Rights Commission. The EEOC elected to pursue this litigation on behalf of Strength, filing the instant lawsuit on July 31, 2012.

## Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In considering a summary judgment motion, the courts determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 at 251-52. The evidence of the non-movant is to be taken as true, and all justifiable inferences

are to be drawn in non-movant's favor. *Anderson*, 477 U.S. at 255; *see Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment. . . ." *Anderson*, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

"When the moving party has carried its burden under Rule 56[a], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted). When the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* (quotations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Garratt v. Walker*, 164 F.3d 1249, 1251 (10th Cir. 1998).

**Analysis**

I.  **Kanbar's Motion for Summary Judgment**

   A.  **The EEOC's ADEA Claim**

The EEOC alleges a single claim against Kanbar for violation of the ADEA.[1] Kanbar seeks summary judgment with respect to this sole claim.

Under the ADEA, it is "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). "[T]he ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 178 (2009). "It follows, then, that under § 623(a)(1), the plaintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action." *Id*. at 177. In *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273 (10th Cir. 2010), the Tenth Circuit addressed the Supreme Court's holding in *Gross* regarding but-for causation, noting that the opinion did little, if anything, to change the ADEA analysis which already had existed in this circuit:

> [W]e have concluded that this causal standard does "not require[ ] [plaintiffs] to show that age was the sole motivating factor in the employment decision." *Wilkerson v. Shinseki,* 606 F.3d 1256, 1266 (10th Cir.2010) (quotations omitted). Instead, an employer may be held liable under the ADEA if other factors contributed to its taking an adverse action, as long as "age was the factor that made a difference." *Id.; accord Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993) (requiring an ADEA plaintiff to show that age had a "determinative influence on the outcome" of her employer's decision-making process). *Gross* does not hold otherwise. Accordingly, *Gross* does not disturb longstanding Tenth Circuit precedent by placing a heightened

---

[1] The EEOC is the agency charged with the administration, interpretation and enforcement of the ADEA and is expressly authorized to bring this action under Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

>evidentiary requirement on ADEA plaintiffs to prove that age was the sole cause of the adverse employment action.

*Id*. at 1277-78 (10th Cir. 2010).  Here, Strength's termination is the adverse employment action complained of.  Therefore, to succeed on its claim under the ADEA, the EEOC must ultimately prove, by a preponderance of the evidence, which may be direct or circumstantial, that age was the "but-for" cause of her termination.  *Gross*, 557 U.S. at 178.

In most cases, where no direct evidence of discrimination is present, a plaintiff must prove discriminatory intent through the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs*., 165 F.3d 1321, 1327 (10th Cir. 1999).  Alternatively, a plaintiff may survive summary judgment if sufficient direct evidence of discrimination is presented.  *Fischer v. Forestwood Co., Inc*., 525 F.3d 972, 983 (10th Cir. 2008) (applying Title VII standards).  When direct evidence is presented, *McDonnell Douglas*'s burden-shifting scheme is inapplicable.  *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985); *Sanders v. Sw. Bell Tel., L.P*., 544 F.3d 1101, 1105 (10th Cir. 2008).

"Direct evidence is evidence from which the trier of fact may conclude, without inference, that the employment action was undertaken because of the employee's protected status."  *See Sanders*, 544 F.3d at 1105 (citing *Riggs v. AirTran Airways, Inc*., 497 F.3d 1108, 1117 (10th Cir. 2007)).  Direct evidence can take the form of "proof of an existing policy which itself constitutes discrimination," or "oral or written statements on the part of a defendant showing a discriminatory motivation."  *Hall v. U.S. Dep't of Labor, Admin. Review Bd*., 476 F.3d 847, 854-55 (10th Cir. 2007) (quotations omitted).  "A statement that can plausibly be interpreted two different ways – one discriminatory and the other benign – does not directly reflect illegal animus, and, thus, does not constitute direct evidence."  *Id*. (quoting *Patten v.*

5

*Wal-Mart Stores East, Inc.*, 300 F.3d 21, 25 (1st Cir. 2002)).  Statements of personal opinion, even if they show personal bias or prejudice, are not direct evidence of discrimination, and instead constitute, at most, circumstantial evidence of discrimination "because the trier of fact must infer discriminatory intent from such statements."  *See Shorter*, 188 F.3d at 1207.  Where direct evidence is relied upon, the plaintiff must demonstrate that a nexus exists between the allegedly discriminatory statements and the decision to terminate her.  *McCowan v. All Star Maint. Inc*., 273 F.3d 917, 922 n. 3 (10th Cir.2001).

In opposition to Kanbar's motion, the EEOC argues that there is sufficient direct evidence of age discrimination to preclude summary judgment in this case.[2]  Specifically, the EEOC identifies the statements attributed to Ghuman by Joe Russell, Braxton Fears, and Clay Clark as direct evidence of discrimination.  Russell, in his declaration (Doc. 36-6), attests that he had a private conversation with Ghuman shortly after Strength's firing where Ghuman told Russell that he had fired Strength because "she was older and he (Ghuman) did not believe she had the ability to meet potential tenants and entertain existing tenants after work." (*Id*.).  Russell also states that Ghuman told him he wanted someone "younger and prettier" for the position. (*Id*.).  In Fears' and Clark's declarations (Docs. 22 and 23, respectively), both attest that Ghuman told them that he had fired Strength because she was "old and ugly" and that he added "who would want to lease from her."  For purposes of summary judgment, Kanbar has not disputed these statements by Ghuman, though he has denied making them. (Doc. 41, at 8).

Kanbar addresses these statements solely in the context of its discussion of whether pretext is present in this case, arguing that Ghuman's statements exhibit mixed motives – i.e.

---

[2]  The Court's ruling as to whether direct evidence of discrimination is present in this case is made without the benefit of argument from Kanbar, as it did not respond to the EEOC's contention in its reply brief in support of its motion for summary judgment.  There is no mention of the direct evidence standard or its application in any of Kanbar's briefing.

6

"ageism and 'lookism'," only one of which is actionable. (*Id.*). Kanbar further argues that, because but-for causation must be shown under *Gross*, this allegedly mixed motive statement does not preclude summary judgment in Kanbar's favor. Kanbar's argument is in contravention of the Tenth Circuit's holding in *Jones*, which, as noted, holds that but-for causation does not equate to sole causation. *Jones*, 617 F.3d 1277-78. In any event, a reasonable jury could find Ghuman's statement that Strength was "old and ugly" to be two sides of the same coin – both being attributable to her age. Moreover, the statements directly demonstrate discriminatory motivation on the part of Ghuman and a direct nexus between that motivation and Ghuman's decision to terminate Strength's employment. A reasonable jury could certainly find that age was the but-for cause of Ghuman's termination decision with respect to Strength. Accordingly, the EEOC has met its burden of coming forth with direct evidence of discrimination sufficient to preclude summary judgment as to its ADEA claim.[3]

### B.  Damages in Excess of $100,000

Kanbar also seeks summary judgment with respect to the amount of damages recoverable by the EEOC. Specifically, Kanbar argues that the EEOC should be bound by a statement made by Strength in her deposition which Kanbar characterizes as an admission that $100,000 would make her whole. The exchange at issue is as follows:

        13      Q  What do you want today from Kanbar? If I
        14 could write a check to you, what amount would make
        15 you happy?
        16      MR. LEE:  I'm going to object to the form.

---

[3] The Court notes that the statements attributed to Ghuman would establish pretext under the *McDonnell Douglas* burden-shifting framework. In addition, in its motion for summary judgment, Kanbar stated that "[f]or purposes of this Motion for Summary Judgment, K[anbar] agrees that the EEOC is able to establish a prima facie case of age discrimination." (Doc. 30, at 8). Thus, even if the Ghuman's statements did not suffice as direct evidence of discrimination, Kanbar would not be entitled to summary judgment.

> 17 If we're going to conduct a settlement conference
> 18 here on the record I don't want to be paying for the
> 19 deposition transcript of that.
> 20    MS. NEAL: Okay. Well, that's an
> 21 interesting objection.
> 22    Q (BY MS. NEAL) So back to my question. If
> 23 I were to write you a check here today, what amount
> 24 of money would make you happy, Ms. Strength?
> 25    MR. LEE: You can go ahead and answer. My
> 1 objection is just to the form.
> 2    A To be treated fairly I can answer.
> 3    Q I'm asking for a figure. I want to know
> 4 the amount.
> 5    A Okay.
> 6    Q You walk out of here today and have a
> 7 Merry Christmas, what amount would that be?[4]
> 8    A 100,000.
> 9    Q Okay. Do you want to go back to work for
> 10 Kanbar?
> 11    A As long as they would treat me fairly, I'd
> 12 love to go back to work.

(Doc. 36, at 27-28). The EEOC responds that the exchange above amounts to an inadmissible settlement negotiation; that it is irrelevant; and that it does not limit the EEOC's claims in any manner.

The Court finds that this exchange between Kanbar's counsel and Strength more closely resembles a request for a settlement amount that Strength would be "happy" with on the day of her deposition than an admission by Strength that her damages are limited to $100,000. There is no reference to damages, be it to front pay, back pay, liquidated damages, or otherwise. Federal

---

[4] Strength's deposition took place on December 11, 2012.

Rule of Evidence 408 bars admission of evidence relating to settlement discussion if that evidence is offered "to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408; *see also Broadcort Capital Corp. v. Summa Med. Corp.*, 972 F.2d 1183, 1194 (10th Cir. 1992). As the Advisory Committee Notes to Rule 408 point out, this type of evidence is irrelevant because the discussions may be motivated by a desire to make peace rather than a calculation of the true value of a claim. Advisory Committee Notes, Fed. R. Evid. 408. As such, the exchange between Kanbar's counsel and Strength is not admissible for purposes of establishing the amount of damages. Even were Strength's response to Kanbar's question regarding having a "Merry Christmas" were she to receive $100,000 on that date admissible, the statement by Strength does not establish the amount of her alleged damages, nor does it limit the remedies available to the EEOC in this litigation. *See E.E.O.C. v. Waffle House, Inc*., 534 U.S. 279, 297, 122 S. Ct. 754, 766, 151 L. Ed. 2d 755 (2002) ("it simply does not follow from the cases holding that the employee's conduct may affect the EEOC's recovery that the EEOC's claim is merely derivative. We have recognized several situations in which the EEOC does not stand in the employee's shoes.").

Hence, Kanbar's request for summary judgment as to this issue is also denied.

### C. Mitigation of Damages

Both parties move for summary judgment with respect to the issue of whether Strength failed to mitigate her damages. There's no question that employment discrimination claimants, such as Strength, have a duty to mitigate their damages. *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231 (1982). "A claimant is required to make only reasonable exertions to mitigate damages, and is not held to the highest standards of diligence. It does not compel h[er] to be successful in mitigation. It requires only an honest good faith effort." *E.E.O.C. v. Sandia Corp.*, 639 F.2d 600,

627 (10th Cir. 1980) (quoting *United States v. Lee Way Motor Freight, Inc.*, 625 F.2d 918, (10th Cir., 1979)). "The employer, however, carries the burden of showing plaintiff failed to exercise due diligence in mitigating any losses." *Acrey v. Am. Sheep Indus. Ass'n*, 981 F.2d 1569, 1576 (10th Cir. 1992) (citing *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1158 (10th Cir. 1990)). The Tenth Circuit adopted the following standard for a successful failure to mitigate defense:

> [T]he defendant must establish (1) that the damage suffered by plaintiff could have been avoided, i. e. that there were suitable positions available which plaintiff could have discovered and for which he was qualified; and (2) that plaintiff failed to use reasonable care and diligence in seeking such a position.

*Sandia Corp.*, 639 F.2d at 627 (quoting *Sias v. City Demonstration Agency*, 588 F.2d 692, 696 (9th Cir. 1978)).

Here, Kanbar has put forth evidence which demonstrates that: from January 2011 through September 2011, Strength performed and documented four to five job-seeking activities per month (Doc. 30-1, at 158); she did not record job activities in November and December of 2011 or January 2012 and cannot recall her efforts for those months (*id.*); she performed four job-seeking inquiries in February 2012 and one in each month from April 2012 through September 2012 (*id.* at 158-59); and she has not sought a real estate license or other certification even though her competitors often have such qualifications (*id.* at 160). However, Kanbar has produced no evidence whatever showing that there were suitable positions available which she could have sought and for which she was qualified. It was Kanbar's burden at this stage to produce evidence in support of its affirmative defense of failure to mitigate. *See Sandia Corp.*, 639 F.2d at 627; *see also Wilson v. Union Pac. R. Co.*, 56 F.3d 1226, 1232 (10th Cir. 1995) ("Mr. Wilson's general failure to seek employment for eighteen months before trial does not alone suffice to justify a mitigation instruction; the defendant must also show that appropriate

jobs were available."). Because Kanbar has not done so, the EEOC is entitled to summary judgment with respect to Kanbar's failure to mitigate affirmative defense.[5]

## II. Plaintiff's Partial Motion for Summary Judgment

The EEOC has moved for partial summary judgment with respect to three affirmative defenses raised in Kanbar's answer. As noted above, the Court finds summary judgment should be granted in favor of the EEOC with respect to Kanbar's affirmative defense of failure to mitigate. In its response to the EEOC's motion, Kanbar notes that it "intended to withdraw two of these Affirmative Defenses by not including them in the Agreed Pretrial Order – its Third Affirmative Defense [failure to conduct a reasonable investigation] and its Forth Affirmative Defense [failure to conciliate in good faith]." (Doc. 35, at 1). Accordingly, the EEOC's motion for partial summary judgment is granted with respect to Kanbar's failure to mitigate affirmative defense and moot with respect to Kanbar's third and fourth affirmative defenses – failure to conduct a reasonable investigation and failure to conciliate in good faith.

**IT IS THEREFORE ORDERED** that plaintiff's Motion for Partial Summary Judgment with Brief in Support (Doc. 24) is **granted in part** and **moot in part**. Defendant Kanbar Property Management, L.L.C.'s Motion for Summary Judgment and Brief in Support (Doc. 30) is **denied**.

The parties are directed to be prepared to discuss the merits of their respective motions in limine during the August 26, 2013 pretrial conference.

**IT IS SO ORDERED** this 23rd day of August, 2013.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

---

[5] Kanbar's affirmative defense of failure to mitigate and its assertion that Strength's damages should be limited to $100,000 are the subject of limine motions by the parties (Docs. 27 and 34). While this Opinion and Order has obvious implications with respect to those motions, all motions in limine will be addressed together in a separate order.